**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PATRICK NEAL ANDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:23-00155-JB-N** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| ***Commissioner of Social Security*****,**[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff Patrick Neal Anderson, proceeding without counsel (*pro se*), brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a partially favorable final decision of the Defendant Commissioner of Social Security on applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*., and for

---

[1] Frank Bisignano's nomination to be Commissioner of Social Security was confirmed on May 6, 2025, and he began his term of service the following day. *See*:

- https://www.congress.gov/nomination/119th-congress/20 (last visited 7/17/2026)
- https://www.ssa.gov/history/commissioners.html (last visited 7/17/2026)

Accordingly, Bisignano was automatically substituted for former Acting Commissioner Kilolo Kijakazi as the party defendant in this action under Federal Rule of Civil Procedure 25(d), and this change did not affect the pendency of this action. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is **DIRECTED** to update the title of this case on the docket accordingly.

supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*. In response to Anderson's brief asserting the errors on which he seeks reversal of that final decision (Doc# 8), the Commissioner filed a "Motion for Remand with Entry of Judgment" (Doc# 11), voluntarily seeking to have the Commissioner's final decision reversed and the case remanded for further administrative proceedings. In response, Anderson states that he opposes remand for further administrative proceedings, at least in part, and moves for the Court to remand with in the directive that he be awarded DIB effective August 3, 2000. (*See* Doc# 13).[2] In reply, the Commissioner opposes remand with any directive to award benefits and argues that remand for further administrative proceedings is the appropriate remedy. The assigned District Judge has referred the Commissioner's motion, and Anderson's counter-motion, to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (9/27/2023 & 10/12/2023 electronic reference notations).

## I. *Procedural Background*

Anderson's case has a lengthy and complicated procedural history. As detailed in prior administrative decisions, Anderson filed his initial concurrent DIB and SSI applications for benefits with the Social Security Administration (SSA) on August 3, 2000. The 2000 applications were first denied in 2002, then again on remand for reconsideration in 2004. Anderson appealed that unfavorable decision to this Court in September 2009. However, because the administrative file for the 2000

[2] Anderson requested the same relief in his opening brief. (*See* Doc# 8, PageID.1302).

applications was apparently lost during the appeals process, in October 2011 this Court remanded Anderson's case on those applications to the Commissioner to locate and reconstruct the file. (*See* Doc# 7, PageID.134).

Meanwhile, Anderson concurrently filed subsequent DIB and SSI applications with the SSA on June 22, 2009, alleging a disability onset date of July 19, 2000.[3] An administrative law judge with the SSA issued a partially favorable decision on the 2009 applications in April 2011. However, in April 2013, the SSA's Appeals Council issued an order consolidating Anderson's cases involving his 2000 and 2009 applications, vacating the prior decisions on all of those applications, and remanding the consolidated cases to an ALJ to issue a new decision on all associated claims, with instructions. (*See* Doc# 7, PageID.134-135).

Following remand of the consolidated cases, an ALJ issued an unfavorable decision, finding that Anderson was not disabled, and thus not entitled to benefits, from July 19, 2000, through August 29, 2014, the date of the decision. (*See id.*, PageID.131-179).[4] After the Appeals Council denied review in 2015, Anderson appealed that final decision to this Court, which reversed and remanded on March 10, 2017, after finding that the ALJ had not properly considered Anderson's service-

---

[3] "For SSI claims, a claimant becomes eligible in the first month where []he is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where []he demonstrates disability on or before the last date for which she were insured." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citation omitted).

[4] Anderson has represented himself in all relevant proceedings from those related to the August 29, 2014 unfavorable decision to the present.

connected disability rating from the Department of Veterans Affairs. (*See id.*, PageID.114-130; S.D. Ala. Case No. 1:11-cv-00061 Docs# 61, 62, 63). Following remand to the SSA, on January 12, 2018, the Appeals Council remanded the case to an ALJ to "offer [Anderson] the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision[,]" "consistent with the order of the court." (*See* Doc# 7, PageID.109-111).

After holding a hearing on June 30, 2022, a different ALJ issued a partially favorable decision on July 20, 2022, finding Anderson was not entitled to DIB, but that he had become disabled and entitled to SSI beginning on August 7, 2019 (the date the ALJ found Anderson's "age category changed to an individual of advanced age"). (*See id.*, PageID.29-107). The Appeals Council declined to assume jurisdiction over the July 20, 2022 ALJ decision on March 6, 2023 (*see id.*, PageID.21-28), and Anderson filed the present action seeking review of that decision on May 2, 2023. *See* (Doc# 1); 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for supplemental security income] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); 20 C.F.R. § 404.984 (a) ("In

accordance with § 404.983, when a case is remanded by a Federal court for further consideration and the Appeals Council remands the case to an administrative law judge, or an administrative appeals judge issues a decision pursuant to § 404.983(c), the decision of the administrative law judge or administrative appeals judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case.").

The Commissioner's present motion states that, if the case is remanded, "the Appeals Council will remand this case to an ALJ with instructions to consider the relevant evidence and prepare an updated exhibit list in accordance with HALLEX I-2-1-15; obtain supplemental vocational expert evidence; obtain supplemental medical expert evidence; take any other action necessary to complete the administrative record; offer the claimant an opportunity for a hearing; and issue a decision on the issue of disability prior to August 7, 2019." (Doc# 11, PageID.1306).

## II. *Analysis*

Under sentence four of § 405(g), a district "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." "In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

The Eleventh Circuit Court of Appeals has recognized that "[g]enerally, a reversal with remand to the [Commissioner for rehearing] is warranted where the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993) (citing *Walker v. Bowen*, 826 F.2d 996, 1001-02 (11th Cir. 1987) (per curiam)).[5] However, it has also held that a reviewing court "may…remand the case [with] entry of an order awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis*, 985 F.2d at 534 (citing *Bowen v. Heckler*, 748 F.2d 629, 635-36 (11th Cir. 1984)). *Davis*, for instance, remanded with directions to award benefits because the evidence the ALJ did accept established that the claimant met one of the Listing of Impairments at Step Three.

---

[5] *See also McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986) ("The Secretary urges that even had the [appropriate] standard been applied correctly at step two, denial of McDaniel's claim at step two would have been required, and therefore the determination by the ALJ should be affirmed. We are well aware of the overload of disability claims facing the Secretary. This awareness tempts this court in cases like this in which it is not shown that the correct standard has been applied by the ALJ. It tempts this court to cut through delay by evaluating the administrative record itself and, applying the correct legal standard, determining for itself whether the claimant has met her step two burden (and, possibly, if it determines she has met that burden, by going on to apply the balance of the sequential steps). The temptation must be resisted, however. Even though motivated by a desire to reduce the Secretary's caseload, it would be an affront to the administrative process if courts were to engage in direct fact finding in these Social Security disability cases. The Congressional scheme is that, governed by standards promulgated by Congress and interpreted by the courts, the administrator is to find the facts case by case and make the determination of presence or absence of disability, and that, in the course of judicial review, the courts are then to respect the administrative determination. In the present case, we imply no view whether McDaniel has made the necessary showing at step two, properly applied. []The judgment of the district court is vacated and this case is remanded to the district court with instructions to remand the case to the Secretary for further proceedings consistent with this opinion.").

*See* 985 F.2d at 534-35. In *Bowen v. Heckler*, the Eleventh Circuit held that uncontradicted evidence from expert witnesses and claimant Bowen's former supervisors "established without any doubt that Bowen was disabled from engaging in gainful employment[,]" such that remand with an order to award benefits was appropriate. 748 F.2d at 636-37. In *Walden v. Schweiker*, to which Anderson cites, the Eleventh Circuit ordered the case "reversed and judgment rendered for the appellant" after finding that the claimant's "unrefuted evidence established she was unable to perform her prior work[,]" and that the SSA "offered no evidence in support of [its] burden" at Step Five. 672 F.2d 835, 840 (1982). Further animating the court's decision to remand with instructions to award benefits was its determination that the claimant had also "suffered an injustice" "[d]ue to the perfunctory manner of the [administrative] hearing, the quality and quantity of errors pointed out, and the lack of substantial evidence to support the ALJ's decision…" *Id.* Considering these precedents, the undersigned finds that remand with an order to award benefits is appropriate here.

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004)).[6]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). But if a claimant satisfies this burden in Steps One through Four, the burden shifts to the Commissioner, at Step Five, to prove that the claimant is capable—given his age, education, and work history—of engaging in other kinds of substantial gainful employment that exist in significant numbers in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). "There are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy. The first is by applying the Medical Vocational Guidelines[,]" often referred to as the "grids." *Phillips*, 357 F.3d at 1239-40), *superseded on other grounds by* 20 C.F.R. § 404.1520c. "The other means…is by the use of a vocational expert. A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

determined that the claimant has will be able to secure employment in the national economy." *Id.* at 1240.

In the August 29, 2014 unfavorable decision, that ALJ (hereinafter, "the 2014 ALJ") determined, after completing Steps One through Four, that Anderson was unable to perform any past relevant work. Proceeding then to Step Five, the 2014 ALJ determined that Anderson could perform other jobs that existed in significant numbers in the national economy. In so finding, the 2014 ALJ relied on the testimony of a vocational expert who testified at a June 2014 hearing that an individual like Anderson would be able to perform the jobs of document preparer, addressor, and router, of which there were, respectively, approximately 140,000, 90,000, and 300,000 positions in the national economy. (Doc# 7, PageID.172).

In the July 20, 2022 partially favorable decision currently under review, a different ALJ (hereinafter, "the 2022 ALJ"), despite the consideration of additional evidence postdating the 2014 ALJ's decision, reached the exact same conclusions as the 2014 in Steps One through Four—of particular note, the exact same list of severe impairments at Step Two, and the exact same residual functional capacity at Step Four. Indeed, a side-by-side comparison of the 2014 and 2022 decisions reveals the 2022 decision repeated the vast majority of the 2014 decision verbatim, interspersed with consideration of the new evidence postdating that decision and additional discussion of Anderson's Veterans Affairs disability ratings (the latter seemingly to comply with this Court's prior remand order). After (again) determining at Step Four that Anderson could not perform any past relevant work, the 2022 ALJ proceeded to

Step Five, where he determined that the "grids" directed a finding of disabled beginning August 7, 2019, but that prior to that date Anderson could perform other jobs that existed in significant numbers in the national economy. In making this other-jobs determination, the ALJ did not rely on new vocational expert testimony, but instead relied on the same 2014 vocational expert testimony that the 2014 ALJ did, finding Anderson could perform the same jobs existing in the same numbers in the national economy as the 2014 ALJ did.[7]

Anderson argues that the 2022 ALJ "cannot take notice of testimony of a Vocational Expert (VE) given in one hearing and use that testimony at another hearing, because such testimony is not presumed valid or reliable." (Doc# 13, PageID.1313). He also argues the 2022 ALJ failed to resolve various apparent conflicts between the 2014 vocational expert's testimony and the Dictionary of Occupational Titles (DOT) as required by Social Security Ruling 00-4p. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358-68 (11th Cir. 2018). The undersigned need not address Anderson's claims of unresolved conflicts. The undersigned also does not hold that an ALJ can never rely on vocational expert testimony given before a different ALJ to satisfy the Commissioner's Step-Five burden. Based on the particular facts of this case, however, the undersigned finds

[7] Inexplicably, the 2022 ALJ stated in his decision that "an impartial vocational expert…appeared at" a hearing held on June 30, 2022. (Doc# 7, PageID.33). The administrative record reveals that two ALJ hearings were held following remand of the 2014 unfavorable decision, one in 2019 and the other in 2022. Though the transcripts of both hearings listed vocational experts as appearing, neither gave testimony—at both hearings, only Anderson testified.

that the 2022 ALJ could not rely solely on the vocational expert testimony given before the 2014 ALJ to satisfy his Step-Five burden in his July 20, 2022 decision.

"[W]hen an ALJ at step five relies on the testimony of a vocational expert for the number of jobs in the national and regional economies that a claimant could perform," the ALJ must ensure that the testimony has "a baseline of reliability." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1284–85 (11th Cir. 2020). "The Dictionary of Occupational Titles, published by the Department of Labor, contains descriptions of thousands of jobs available in the national economy, and is used by the Commissioner of Social Security to adjudicate benefit applications by claimants." *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1311 (11th Cir. 2021) (citing 20 C.F.R. § 416.966(d)(1)). More specifically, "[t]he DOT groups jobs into 'occupations' based on their similarities and assigns each occupation a code number." *Goode*, 966 F.3d at 1281. While "the Department of Labor has not revised the DOT since 1991[,] it remains one of the vocational expert's primary tools." *Id.* However, "DOT codes…do not provide statistical information about the number of jobs available in the national economy. Instead, the vocational expert must look to other sources…to find employment statistics." *Id. See also Brault v. Soc. Sec. Admin., Com'r,* 683 F.3d 443, 446 (2d Cir. 2012) ("The DOT, however, just *defines* jobs. It does not report how many such jobs are available in the economy."); SSR 00-4p (S.S.A. Dec. 4, 2000) ("Evidence from VEs…can include information not listed in the DOT.").

The 2022 ALJ failed to explain why the number of jobs for document preparer, addressor, and router provided by the 2014 vocational expert should reasonably be

expected to remain unchanged eight years later. Indeed, when questioned by and Anderson at the 2014 hearing about her methodology for determining the numbers of jobs available, the vocational expert replied that "the statistics are based on labor market surveys, so nothing is exact." (Doc# 7, PageID.99). Utilizing only the 2014 vocational expert testimony also deprived Anderson of the ability to cross-examine the expert in 2022 based on updated information and evidence.[8] *Cf. Biestek v. Berryhill*, 587 U.S. 97, 107, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019) (when "an expert's refusal [to provide supporting data] precludes meaningful cross-examination[,]" "an ALJ and reviewing court may properly consider obstacles to such questioning when deciding how much to credit an expert's opinion"). Moreover, because the 2022 ALJ was not the same ALJ who presided over the 2014 hearing, his decision to defer entirely to the 2014 vocational expert testimony is not entitled to deference from this Court. *See id.* at 108 ("The inquiry…in determining the substantiality of evidence, is case-by-case…It takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record. And in so doing, it defers to the presiding ALJ, *who has seen the hearing up close*."). For these reasons, the vocational expert's 2014 testimony alone did not constitute substantial evidence to support the 2022 ALJ's Step-Five burden.

"The question remaining is whether this case should be remanded to the Commissioner for further administrative proceedings or reversed with

[8] The transcript of the 2022 hearing indicates that Anderson expected to question the vocational expert there. (Doc# 7, PageID.297).

direction…that benefits be awarded." *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). In *Morales*, the Third Circuit Court of Appeals chose the latter option based on the following circumstances:

> This case, like many others involving disability determinations, has suffered considerable inexplicable delays, and we hesitate to add further abeyance. Morales has had two hearings before an ALJ followed by two petitions to the appeals council, two appeals to the district court, and the present appeal to the court of appeals. The disability determination has already taken ten years and the record is unlikely to change. Furthermore, the delay in this case has been caused by deficiencies that are not attributable to any error of the claimant. Moreover, the extensive medical record, wrongly rejected by the ALJ, is substantial evidence that Morales suffers from a severe mental disability that renders him unable to engage in substantial gainful activity…Because substantial evidence dictates a finding by the Commissioner that Morales is disabled and entitled to disability benefits, we reverse the judgment of the district court and do not remand this case for further administrative proceedings.

*Id.* (citations omitted).

The undersigned finds the facts of this case comparable to those in *Morales*.[9] Anderson has also suffered considerable delay in his case, little if any of which can be

---

[9] *See also Breeden v. Weinberger*, 493 F.2d 1002, 1011-12 (4th Cir. 1974) ("We conclude that the administrative decision denying coverage was not supported by substantial evidence. Ordinarily we would remand to give the Secretary an opportunity to apply the correct legal standard. This case, however, has been pending in the agency and the courts for almost five years and has been remanded once before for additional evidence. The statute governing review in Social Security cases authorizes us to reverse the Secretary's decision 'with or without remanding the cause for a rehearing.' 42 U.S.C. § 405(g). We have previously exercised this discretion. E.g., Cyrus v. Celebrezze, 341 F.2d 192 (4th Cir. 1965); Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964); Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Under this statute, we think it appropriate to reverse without remanding where the record does

attributed to him. As noted above, Anderson essentially had to redo the first ten years of his administrative proceedings because the SSA lost his case file for those years. And after the second remand from this Court on March 10, 2017, the Appeals Council took almost a year, until January 12, 2018, to remand Anderson's case to an ALJ for further proceedings. It then took the 2022 ALJ over four years to hold another hearing and issue a new decision. While some that delay can certainly be attributed to the COVID-19 pandemic that took hold in early 2020, that does not adequately explain why the ALJ did not use the two-year period before then to resolve Anderson's case, particularly given its already lengthy pendency, and when the 2022 ALJ apparently did not intend to take any new vocational expert testimony.

---

not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." (footnote omitted)); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992) ("In light of the Secretary's mistaken reliance on the improper medical report and in light of our review of Mrs. Randall's extensive medical record, we hold that there is not substantial evidence to support the Secretary's decision that Mrs. Randall is not disabled. Because of the medical record, we think it unconscionable to remand this eight year old case to the Secretary for further review. Accordingly, we remand this case with instructions to remand to the Secretary, and order him to award Mrs. Randall the benefits she would have otherwise been entitled to but for the determination by the ALJ that she could perform other work in the national economy despite her disability."); *Carroll v. Sec'y of Health & Hum. Servs.*, 705 F.2d 638, 644 (2d Cir. 1983) ("[A]bsent a showing by the Secretary of good cause for a remand, the present case would be an appropriate one in which to carry out Congress' mandate to foreshorten the often painfully slow process by which disability determinations are made. It has now been four years since Carroll applied to HHS for disability benefits. A remand, potentially followed by another appeal, could well delay the payment of benefits to which Carroll appears to be entitled for still further years.").

Given that Anderson's disability adjudication proceedings had already spanned over two decades by then and had already been subject to multiple remands by both the Appeals Council and this Court, the 2022 ALJ's inexplicable failure to take new vocational expert testimony is particularly inexcusable. By that point, it should have been clear to a reasonable ALJ that Anderson's case deserved careful and thorough attention, especially if benefits were being denied again. The 2022 ALJ's decision does not reflect that Anderson's case received such attention. Despite the substantial passage of time, the 2022 ALJ, apparently without informing Anderson ahead of time, chose not to take any new vocational expert testimony to satisfy the Commissioner's Step-Five burden, and instead relied solely on stale testimony from 2014. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam) ("Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."). As explained above, whatever the value of that testimony in 2014, it could not be considered substantial evidence in 2022.[10] In addition to the 2014 testimony, the 2022 ALJ also relied word-for-word on large portions of the 2014 ALJ's decision, and reached the exact same conclusions at Steps One through Four. This does little to assure the Court that the 2022 ALJ performed his duty to carefully scrutinize the entire record when reaching his decision. *See Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)

[10] The Commissioner tacitly acknowledges that the 2022 ALJ's reliance solely on the 2014 vocational expert testimony was at least problematic, as his motion to remand states that the Commissioner will direct the ALJ to, among other things, "obtain supplemental vocational expert evidence" on remand. (Doc# 11, PageID.1306).

(per curiam) (The ALJ's "onerous task" is to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." (citation and quotation omitted)).

Anderson's "disability determination has already taken [over twenty] years[,] the record is unlikely to change[,]" *Morales*, 225 F.3d at 320, and he has already twice met his burden in the first four steps of the sequential evaluation of showing that he cannot perform past work. Given the perfunctory nature of the 2022 ALJ's decision following significant delay and multiple remands, the undersigned finds that remand with instructions that Anderson be awarded the DIB benefits he requests is appropriate.

### III. *Conclusion & Recommendations*

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that Anderson's motion for the Court to remand with in the directive that he be awarded DIB effective August 3, 2000 (Doc# 13) be **GRANTED**, and that the Commissioner's "Motion for Remand with Entry of Judgment" (Doc# 11) be **GRANTED in part** and **DENIED in part**, such that the following should be ordered under sentence four of 42 U.S.C. § 405(g):

1. That the Commissioner's March 6, 2023 final decision be **REVERSED in part** as to the determination that Anderson was not disabled prior to August 7, 2019;
2. That Anderson's case be **REMANDED** to the Commissioner with directions to

award Anderson all DIB benefits to which he is due on his 2000 and 2009 applications effective August 3, 2000, so long as he meets all non-disability requirements for same; and

3. That Anderson's case as to whether he was disabled prior to August 7, 2019, be otherwise **REMANDED** to the Commissioner for further proceedings consistent with the foregoing. On remand, the Commissioner shall, in addition to any other appropriate action, remand this case to an ALJ with instructions to consider the relevant evidence and prepare an updated exhibit list in accordance with HALLEX I-2-1-15; obtain supplemental vocational expert evidence; obtain supplemental medical expert evidence; take any other action necessary to complete the administrative record; offer the claimant an opportunity for a hearing; and issue a decision on the issue of disability prior to August 7, 2019.

The undersigned further **RECOMMENDS** that such final judgment be set out by separate document in accordance with Federal Rule of Civil Procedure 58.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations

contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **17th** day of **July 2026**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**